UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ALVIN JEFFRIES,

Plaintiff,

v.

JORDAN, et al.,

Defendants.

CAUSE NO. 3:25-CV-719-HAB-ALT

OPINION AND ORDER

Alvin Jeffries, a prisoner proceeding without a lawyer, filed a complaint under 42 U.S.C. § 1983. (ECF 1.) Pursuant to 28 U.S.C. § 1915A, the court must screen this pleading and dismiss it if it is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Jeffries is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Jeffries is an inmate at Pendleton Correctional Facility. His complaint stems from events occurring in 2025 when he was incarcerated at Miami Correctional Facility ("Miami"). He claims that on or about February 4, 2025, his unit was on lockdown, but he was let out of his cell to perform his job as an inmate sanitation worker. He claims Officer Jordan and Officer Warley (first names unknown) also let out another inmate

who was known to be dangerous, even though this inmate was not supposed to be out of his cell. He claims the officers knew this would put him in "harms' way." He states that while he was working, the other inmate attacked and stabbed him several times, causing injury to his neck, back, and hand. It appears that Jeffries was initially accused of some type of wrongdoing in connection with the altercation with the other inmate, because he states that he was sent to segregation for 50 days before being released.

He further claims that immediately after the attack he saw two different nurses who said that he needed stitches. However, when he saw Dr. Partain (first name unknown), the doctor allegedly just bandaged his hand and said "you are good." He claims she failed to properly secure the wound or to order any ongoing wound care, causing him to suffer "constant bleeding" and pain for a month. Based on these events, he sues the above individuals and the Warden of Miami for monetary damages.

The Eighth Amendment imposes a duty on prison officials to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). However, "prisons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must allege that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). To be held

liable, a defendant must have "acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to [plaintiff's] health or safety, yet failed to take appropriate steps to protect him from the specific danger." *Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008); *see also Sinn v. Lemmon*, 911 F.3d 412, 422 (7th Cir. 2018).

Giving Jeffries the inferences to which he is entitled at this stage, he has alleged a plausible failure-to-protect claim against Officers Jordan and Warley. He claims they let an inmate known to be dangerous out of his cell during a lockdown when Jeffries was performing sanitation work. He claims they knew this put him in danger. As a result, he was stabbed several times. He will be permitted to proceed further on a claim against them under the Eighth Amendment.

He also sues the Warden of Miami. There is no general *respondeat superior* liability under 42 U.S.C. § 1983, and this official cannot be held liable for damages merely because he oversees operations within the prison. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Supervisors can be held liable for a constitutional violation committed by a subordinate, but only if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019).

There is an insufficient basis in the complaint from which the court could plausibly infer that the Warden was involved in, approved of, or consented to the actions of Officers Jordan and Warley when they let the other inmate out of his cell. It appears Jefferies wrote to the Warden after the fact to complain about what happened

and got no response, but that alone does not support a claim for damages against him. As the Seventh Circuit has explained:

> Public officials do not have a free-floating obligation to put things to rights . . . Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. . . . . [The plaintiff's] view that everyone who knows about a prisoner's problem must pay damages implies that [a prisoner] could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to [a resolution of the problem]. That can't be right.

*Burks*, 555 F.3d at 595. He has not stated a plausible damages claim against the Warden. Although the Warden could be a proper defendant in connection with a claim for prospective injunctive relief, *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011), Jeffries is at a different prison and so any such claim is moot. *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) ("If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred.") (citation and internal quotation marks omitted). This defendant will be dismissed.

Inmates are also entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To allege a violation of this right, a prisoner must allege (1) he had an objectively serious medical need and (2) the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). As previously stated, deliberate indifference represents a

high standard. "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to assert an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Instead, the inmate must allege "a culpability standard akin to criminal recklessness." *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021).

Furthermore, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. The court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). In effect, the Eighth Amendment protects prisoners from "grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019).

Here, Jeffries alleges that he suffered serious injuries when he was stabbed by another inmate. He claims he needed stitches and ongoing wound care, but the doctor did nothing but bandage his hand and send him away. He claims this caused lingering problems with bleeding and pain for a month. He has alleged enough to proceed further on a claim for damages against this medical provider.

Although unclear, Jeffries may be trying to assert a Due Process claim related to the time he spent in segregation. However, the Fourteenth Amendment Due Process Clause does not create a liberty interest in remaining in the prison's general

population. *See Wilkinson v. Austin*, 545 U.S. 209, 222 (2005); *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Instead, "an inmate's liberty interest in avoiding segregation is limited." *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013). To trigger a liberty interest, an inmate must be subjected to restrictive conditions that present a "significant and atypical hardship" in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484-85. There is no firm rule as to the amount of time that must be spent in segregation to trigger a liberty interest, and instead courts must "look to both the duration of the segregation and the conditions endured." *Lisle v. Welborn*, 933 F.3d 705, 721 (7th Cir. 2019). It is not enough that conditions are "more severe than those found in the general prison population." *Hardaway*, 734 F.3d at 744. They must be very harsh or restrictive, in the vein of depriving a prisoner of "all human contact or sensory stimuli." *Id.*

Jeffries states that he was in segregation for a little less than two months, and he does not describe any unduly harsh or restrictive conditions he experienced there. The court cannot plausibly infer from his allegations that he was subjected to a "significant and atypical hardship" in relation to the ordinary incidents of prison life. *See Hardaway*, 734 F.3d at 743 (a few months in segregation did not trigger a liberty interest "in the absence of exceptionally harsh conditions"). This claim will be dismissed.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Officer Jordan and Officer Warley (first names unknown) in their individual capacity for money damages for failing to protect him from being attacked by another inmate on or about February 4, 2025, in violation of the Eighth Amendment;

(2) GRANTS the plaintiff leave to proceed against Dr. Partain (first name unknown) in her individual capacity for money damages for failing to provide him with constitutionally adequate medical care following the attack in violation of the Eighth Amendment;

(3) DISMISSES all other claims;

(4) DISMISSES English as a defendant;

(5) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Officer Jordan and Officer Warley (first names unknown) at the Indiana Department of Correction and to send them a copy of this order and the complaint (ECF 1) pursuant to 28 U.S.C. § 1915(d);

(6) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Dr. Partain (first name unknown) at Centurion Health and to her a copy of this order and the complaint (ECF 1) pursuant to 28 U.S.C. § 1915(d);

(7) ORDERS the Indiana Department of Correction and Centurion Health to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent this information is available; and

(8) ORDERS Officer Jordan, Officer Warley, and Dr. Partain to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to

the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on November 5, 2026.

s/ Holly A. Brady
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT